**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 06-20298

DEANGELO DAVIS,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Pending before the court is Defendant DeAngelo Davis's August 17, 2006 "Motion to Suppress Evidence." The court conducted an evidentiary hearing on the motion on September 21, 2006 and denied the motion. This written order memorializes the basis for the court's denial.

**I. INTRODUCTION**

Defendant is charged in a one-count indictment with being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g).

On October 5, 2004 officers from Livingston and Washtenaw Narcotics Task Force ("LAWNET") executed a search warrant at the Park View Apartments, 517 Perry, in Ypsilanti, Michigan. No challenge is made regarding the legitimacy of that search warrant. Rather, Defendant's motion challenges the search and seizure of Defendant's person as he was standing outside the rear entrance of 517 Perry.

Specifically, as the search warrant was being executed, one of the LAWNET officers noticed three individuals in the backyard approximately fifteen feet from the rear

door of the apartment. Detective Brian Johnson ordered the three individuals to get on the ground. Two of them fled, while Defendant complied. Defendant was searched, and Detective Johnson recovered cocaine and a firearm from his person.

## II. STANDARD

The United States Constitution bars "unreasonable searches and seizures." U.S. Const. amend. IV. A stop for questioning is reasonable if the police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21 (1968). The reasonableness of the officer's belief is measured against an objective standard. *Id.* at 22. In finding reasonable suspicion, "the totality of the circumstances--the whole picture--must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417 (1981).

Under the exclusionary rule, evidence seized during an unconstitutional search is inadmissible. *Weeks v. United States*, 232 U.S. 383, 398 (1914). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams,* 407 U.S. 143, 146 (1972).

## III. DISCUSSION

The United States Supreme Court has held that in certain circumstances, law enforcement officials have a limited authority to detain occupants of a premises while a proper search is being conducted. *Michigan v. Summers,* 452 U.S. 692, 705 (1981). "In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the 'articulable facts' supporting the detention are relevant." *Id.* at

702. The Court explained:

> Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence.

*Id.* at 702. The Court further stated:

> The existence of a search warrant, however, also provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.

*Id.* at 703-04. The Sixth Circuit expanded *Summers* in *United States v. Bohannon,* 225 F.3d 615 (6th Cir. 2000), to individuals who are not occupants of the premises being searched, but are entering or leaving the premises. "[A]lthough *Summers* itself only pertains to a resident of the house under search, it follows that the police may stop people coming to or going from the house if police need to ascertain whether they live there." *Bohannon* 225 F.3d at 617 (quoting *Baker v. Monroe Township,* 50 F.3d 1186, 1192 (3d Cir.1995)). "The possible danger presented by an individual approaching and entering a structure housing a drug operation is obvious. In fact, it would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances." *Id.* (quoting *United States v. Patterson,* 885 F.2d 483, 485 (8th Cir.

3

1989)).

*Summers* was further expanded in *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), where the Sixth Circuit held that police officers could detain an individual who was neither "a resident of the searched premises nor arrived at the searched premises." *Id.* at 943. In *Burchett*, the detained individual was a neighbor who approached the property line, but remained on his own property. *Id.* The court held "that officers act within their *Summers* powers when they detain an individual who approaches a property being searched pursuant to a warrant, pauses at the property line, and flees when the officers instruct him to get down." *Id.* at 944. The court stated that the individual's "presence on the property line and his flight upon encountering the officers would suggest to a reasonable law enforcement official that he posed a similar risk of flight and danger to others as an individual who arrived at the premises during a search." *Id.*

Similar reasoning was employed in *United States v. Vite-Espinoza,* 342 F.3d 462 (6th Cir. 2003), to allow the search of individuals, not entering the searched premises, but merely standing in the backyard. The Sixth Circuit stated:

> The defendants point out that the case at bar differs in that they were not entering or leaving the searched residence but were merely present in its backyard. Indeed, this circumstance does render the inference of involvement with the criminal activity inside the house weaker, but only slightly so. Innocent individuals are not significantly more likely to while away their hours in the backyard of a drug and counterfeit document distribution facility than they are to enter or to leave it. And in so far as their presence raises a reasonable suspicion of involvement in criminal activity, the rationales found sufficient in *Bohannon,* prevention of flight and harm to officers conducting the search, are equally applicable here.

*Id.* at 468.

The court finds that its determination is controlled by *Vite-Espinoza,* because the facts in this case are materially indistinguishable from those present in *Vite-Espinoza*. The officers obtained a warrant to search the premises at 517 Perry, which, according to Detective Sergeant Charles Bachmeier and Detective Brian Johnson, is located in an apartment complex in an area well known by both law enforcement and in the community as a high-drug trafficking area. Indeed this was also confirmed by the assistant manager of the property, Tera Yates. The warrant indicates that the confidential informant had purchased drugs outside the door of 517 Perry. (Warrant at 2.) The Operational Plan for executing the search warrant states that 517 has a "back door escape route" and that there may be "subjects loitering in area as look-outs." (Operational Plan at 3.)

During the execution of the search warrant, Detective Johnson was assigned rear security detail. In performing this duty, he witnessed three black males outside the rear door of 517 Perry. The court finds that, consistent with Detective Johnson's testimony, these individuals were located fifteen feet, or fewer,[1] from the sliding door of

---

[1] The court finds Detective Johnson's testimony regarding Defendant's location to be credible. Johnson testified that the individuals were fifteen feet from the back door, while Detective Sergeant Bachmeier testified that when he went to the back of 517 Perry to assist Johnson, Defendant was about on the ground six feet from the back door. The court finds that this minor discrepancy does not detract or discredit the testimony of Johnson. As pointed out during the hearing, the difference is logically explained by the fact that a person's position is naturally adjusted when he moves from standing to prone. Moreover, the court specifically rejects the testimony of Tera Yates that Defendant was located on the outside of property, on the other side of the fence surrounding the apartment complex. The court finds unreliable her memory of a fleeting event which occurred two years in the past. Further, from her testimony of her location when she saw Defendant, the court calculates that she was approximately 300-400 feet from Defendant, which is much too great a distance to recognize someone whom she states she had only seen one or two times prior to the incident and only "knew his face."

5

the back of 517 Perry, in the backyard of the adjacent apartment.[2] He ordered them to get down, and two of them fled. Defendant, however, complied and the gun and two bags of narcotics were found on his person.

The court finds that Detective Johnson's detention of Defendant was reasonable, under the facts as he testified to during the evidentiary hearing. He reasonably believed that Defendant posed a security risk. When Johnson first saw Defendant, Defendant was closer to the back door of 517 Perry than Johnson was. Defendant easily could have signaled any occupants inside of 517 Perry, or raced into the building before Johnson could stop him. Johnson reasonably feared for the safety of the officers inside the building; he could hear shouts and commands from inside 517 Perry, so he knew that officers had encountered occupants. Johnson also reasonably feared for the safety of individuals who were currently (or potentially about to be) outside the back of 517 Perry. Because the warrant was executed around the time of day that children would be coming home from school, he also reasonably feared for the safety of any children who might be located in the area. Finally, he was reasonably concerned about the destruction of evidence.

Under the authority of *Summers*, the court finds these concerns to be legitimate. *Summers,* 452 U.S. at 702 (finding that preventing flight, minimizing harm of officers

---

Moreover, even if the court were to accept her testimony that she witnessed Defendant at the location she claims, Ms. Yates testified that she did not witness the detention of Defendant, and therefore she has no knowledge of his movements after she went back to the rental office.

[2]517 Perry is a townhouse connected to other townhouses on either side. The backyards of these townhouses are not separated by any sort of fence or other physical barrier.

6

legitimate law enforcement interests, particularly in the execution of a warrant to search for narcotics because such execution is the "kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence"); *see also Vite-Espinoza,* 342 F.3d at 468 ("[I]n so far as their presence raises a reasonable suspicion of involvement in criminal activity, the rationales found sufficient in *Bohannon,* prevention of flight and harm to officers conducting the search, are equally applicable here."). Indeed, under the facts as illuminated at the evidentiary hearing, "it would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances." *Bohannon* 225 F.3d at 617 (quotation omitted).

As in *Vite-Espinoz*, the court finds "that the combination of the close factual resemblance to *Bohannon* and the additional suspicious circumstances . . . was sufficient to create reasonable, articulable suspicion." *Vite-Espinoz,* 342 F.3d at 468. Accordingly, the police officers were permitted to stop and frisk Defendant, and there is no basis to suppress the evidence found on Defendant's person.

## IV. CONCLUSION

For the reasons stated above, and as further explained on the record during the September 21, 2006 hearing,

IT IS ORDERED that Defendant DeAngelo Davis's August 17, 2006 "Motion to Suppress Evidence" [Dkt. # 12] and is DENIED.

    S/Robert H. Cleland  
    ROBERT H. CLELAND  
    UNITED STATES DISTRICT JUDGE

Dated: October 20, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 20, 2006, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522